## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 18-3073-03-CR-S-BP |
| | ) | |
| RODRIGUEZ R. BRADLEY, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT & RECOMMENDATIONS

Before the Court is Defendant Rodriguez R. Bradley's Motion to Suppress Evidence and Request for a *Franks v. Delaware* Hearing. (Doc. 215.) This matter has been referred to the undersigned for preliminary review pursuant to 21 U.S.C. § 636(b)(1)(A). Defendant moves to suppress all items and statements obtained as a result of the search warrant issued on January 3, 2017 and executed by the Springfield Police Department (SPD) on January 5, 2017. In the same motion, Defendant requests a *Franks* hearing regarding alleged misconduct by law enforcement in procuring the same warrant. The undersigned held an evidentiary hearing on the Motion on June 3, 2020. (*See* Doc. 241). Defendant was present with his attorney, Shane P. Cantin, and the United States Government was represented by Assistant United States Attorney Nhan D. Nguyen. (*Id.*) The Court heard testimony from Steven Hartman, a detective in the Special Investigations Unit of the SPD. (*Id.*) For the reasons set forth below, it is **RECOMMENDED** that Defendant's Motion be **DENIED**.

1

## I.   Findings of Fact[1]

### A.  Surveillance of the Silsby address begins

Det. Hartman began investigating Defendant based on information from a reliable confidential informant ("CI") regarding the distribution of heroin. Det. Hartman first observed Defendant at 424 West Silsby, Springfield, MO ("the Silsby address") on September 2, 2016. On that date, he observed Defendant leave the Silsby address in a grey Mercedes that had a license plate frame with the phrase "The Auto Shop" on it and a decal reading the same on the rear of the vehicle. (*See* Gov. Ex. 1).

### B.  The October 5, 2016 traffic stop

On October 5, 2016, Det. Hartman was surveilling the Silsby address when he observed a red Chevrolet Impala arrive at the residence then leave a few minutes later. He followed the Impala and performed a traffic stop. (*See* Gov. Ex. 2). The driver and owner of the Impala was Jasmine Lynn, and Defendant was in the passenger seat. At the time of the stop, Det. Hartman was aware that Defendant was a convicted felon on probation for the distribution of a controlled substance.

Ms. Lynn gave Det. Hartman consent to search the Impala, and Defendant gave him consent to search his person and his backpack. In the backpack, Det. Hartman found $9,190 bound in rubber bands. Det. Hartman called a K-9 officer for assistance and continued to search the Impala. Det. Hartman found a firearm partially underneath, partially behind the driver's seat. The K-9 officer and the police service dog then arrived at the scene. The service dog indicated the odor of a controlled substance on ashes in the center console of the Impala, the backpack and money therein, and the firearm.

---

[1] The facts set forth herein are taken from the testimony adduced and the exhibits admitted at the hearing on the instant Motion. The parties' exhibit indices appear at docs. 242 and 243. The hearing transcript appears as doc. 244.

2

Det. Hartman asked Ms. Lynn about the firearm, and she confirmed that Defendant placed the firearm in the position where Det. Hartman had found it. Another vehicle then arrived at the scene of the traffic stop. Det. Hartman spoke with the driver, Myesha Dean, who stated she owned the firearm. She told Det. Hartman that Defendant had previously borrowed her vehicle which contained the firearm. When her vehicle became disabled, she believed Defendant removed the firearm from it. Det. Hartman then placed Defendant under arrest.

During booking at the Greene County Jail that night, two cell phones were found on Defendant. Det. Hartman was able to view the contents of the two phones, including several text messages from people requesting heroin, including a Delaney Murrell. Det. Hartman filed an incident report for the October 5, 2016 traffic stop. (*See* Def. Ex. E).

### C. Surveillance of the Silsby address continues

Around mid-October of 2016, the SPD received additional information from multiple confidential informants that Defendant was involved in the distribution of heroin at the Silsby address.

On November 18, 2016, Det. Hartman conducted a controlled buy at the Silsby address, wherein a CI bought heroin from a James Kennedy. Defendant was not present at the time of the controlled buy.

From December 3, 2016 to January 2, 2017, Det. Hartman continued to conduct surveillance of the Silsby address. He observed Defendant at the residence several times during this time period but made no formal record of the surveillance.

### D. Surveillance of the Thelma address and subsequent drug deal

During the same December 3, 2016 to January 2, 2017 time period, Det. Hartman also conducted surveillance of 2025 South Thelma Avenue ("the Thelma address"). During this time

period, Det. Hartman observed multiple vehicles making brief stops at the Thelma address. Det. Hartman verified that the utilities for the Thelma address were registered in Defendant's name.

On December 29, 2016, Det. Hartman followed a grey Mercedes from the Thelma address to a business parking lot. Det. Hartman believed it was the same grey Mercedes from the September 2, 2016 traffic stop because it had the same license plate frame and decal reading "The Auto Shop." Det. Hartman believed the driver of the vehicle was Defendant based on his physical appearance, the fact the vehicle had just left the Thelma address, and the fact that Defendant had driven it in the past.

At the business parking lot, the Mercedes parked, and Det. Hartman observed Delaney Murrell exit a different vehicle and enter the Mercedes. A few minutes later, Ms. Murrell exited the Mercedes and re-entered the second vehicle. After the Mercedes left the parking lot, Det. Hartman contacted Ms. Murrell and the two other occupants of the second vehicle. All three occupants possessed small amounts of heroin, and Ms. Murrell stated that she had just purchased the heroin from Defendant.

### E. Additional investigation

At some point during the investigation, Det. Hartman checked Defendant's criminal history. He learned that Defendant had past convictions for: distribution of heroin; unlawful use of a weapon; second-degree assault; distribution, delivery, and manufacture of a controlled substance; and, driving under the influence of drugs.

Det. Hartman continued to receive information from CIs about Defendant selling heroin until January 2, 2017, the day before a search warrant was issued for Defendant's residence.

4

**F. The affidavit and search**

Based on the information gained from his investigation, Det. Hartman applied for a no-knock search warrant for the Thelma address. (*See* Gov. Ex. 3). Det. Hartman's affidavit in support of the warrant was reviewed by an assistant prosecuting attorney, then presented to Judge Palmietto of the Circuit Court of Greene County, Missouri. The warrant was issued on January 3, 2017 and executed on January 5, 2017. During the search of the Thelma address, officers found a pistol, marijuana, cocaine, heroin and other dangerous drugs, several cell phones, a large amount of U.S. currency, and other paraphernalia. Defendant was read his *Miranda* rights. He stated that he resided at the Thelma address and requested an attorney. Defendant was arrested for Possession of a Controlled Substance with Intent to Distribute.

The relevant portions of the affidavit are as follows:

Within the past two months, Officers with the Springfield Police Department Special Investigations Unit have received information from multiple reliable confidential sources regarding Rodriguez Bradley being involved in the distribution of heroin. Within the past month, I have observed Rodriguez Bradley on several occasions at a residence known to be involved in the distribution of heroin.

On 10/05/2016 I conducted a traffic stop on a red Chevrolet Impala at 220 W. Sunshine. The driver of the vehicle was Jasmine Lynn and the passenger was Rodriguez Bradley. Lynn consented to a search of the vehicle. Rodriguez had a backpack in the passenger's floor compartment which he consented to a search of. The backpack contained a large sum of cash. A police service dog indicated the odor of a controlled substance on the cash alone. Also behind the driver's seat was a 9mm handgun of which the dog also indicated the odor of controlled substance. The driver stated Bradley had placed the gun behind the seat. Myesha Dean arrived on the scene and stated she had purchased the handgun, but that Bradley had possessed it. Bradley is a convicted felon and prohibited from possession of a firearm. Bradley was on probation for two counts of Distribution of Controlled Substance out of Greene County, Missouri. Bradley was arrested for Unlawful Possession of a Firearm.

On multiple occasions, I have observed Rodriguez Bradley at 2025 South Thelma Avenue, Springfield, Greene County, Missouri. I have observed Bradley driving a grey in color Mercedez which is often parked in the driveway of the residence. A

check of the utilities of 2025 South Thelma Avenue confirmed Bradley has services in his name at the residence.

Within the past thirty days, I have conducted surveillance at 2025 South Thelma Avenue and observed multiple different vehicles coming and going from the residence. Within the past five days, I observed a gray Mercedez leave the residence with a male whom I believed to be Rodriguez Bradley driving the vehicle. I had observed Bradley operate this vehicle on multiple occasions in the recent past. I followed the vehicle from 2025 South Thelma Avenue to a business parking lot where the vehicle parked. I then observed a person enter the Mercedez for approximately one minute before exiting the vehicle. The Mercedez then left the parking lot and the person whom exited the Mercedez entered his/her vehicle. I made contact with the occupants of the vehicle which the person whom exited Rodriguez Bradley's vehicle entered. During that investigation, one of the occupants threw a small amount of heroin on the ground and attempted to conceal it. It was confirmed by one of the occupants of the vehicle who was also in possession of heroin that he/she had purchased the heroin from Rodriguez Bradley.

## II.    Conclusions of Law

American citizens are protected from "unreasonable searches and seizures" by the Fourth Amendment. U.S. Const. amend. IV. "A violation of the Fourth Amendment usually triggers exclusion of evidence obtained by way of the violation from a subsequent criminal prosecution." *United States v. Davis*, 760 F.3d 901, 903 (8th Cir. 2014) (quoting *United States v. Barraza–Maldonado*, 732 F.3d 865, 867 (8th Cir. 2013)) (internal quotations omitted).

Defendant has requested a *Franks* hearing and moved to suppress evidence gathered under a warrant to search his residence. Defendant makes two arguments: 1. In his request for a *Franks* hearing, he claims Det. Hartman deliberately or recklessly made false statements in, or omitted critical information from, the affidavit; and 2. In support of his motion to suppress evidence, Defendant claims the affidavit failed to establish probable cause to search the Thelma Avenue. The Government responds that the statements made in the affidavit were not false, let alone deliberately or recklessly made to mislead the issuing judge, the affidavit established probable

6

cause, and, if the affidavit did not establish probable cause, Det. Hartman is entitled to a good faith exception under *Leon*.

### A. Request for a *Franks* hearing

Defendant first claims Det. Hartman deliberately or recklessly made false statements or omitted critical information from the affidavit, thus misleading the issuing judge. Under *Franks v. Delaware*, a hearing into an officer's alleged misconduct is appropriate when "[1] the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and [2] if the allegedly false statement is necessary to the finding of probable cause." 438 U.S. 154, 155-56 (1978). This rule was expanded to allow a *Franks* hearing when there is a deliberate or reckless omission from the affidavit. *United States v. Reivich*, 793 F.2d 957, 960 (8th Cir. 1986). The court begins with a presumption that the affidavit is truthful, and the defense must offer proof to support its allegations of falsity or omission. *Franks*, 438 U.S. at 171. In order to obtain a *Franks* hearing, a defendant must make a "substantial preliminary showing comprised of specific allegations along with supporting affidavits or similarly reliable statements." *United States v. Williams*, 477 F.3d 554, 558 (8th Cir. 2007) (internal quotations omitted). If a defendant can show that a false statement was made knowingly or recklessly in the affidavit, then, if the affidavit does not establish probable without the false information, the search warrant must be voided, and the fruits of the search excluded from evidence. *Franks*, 438 U.S. at 155-56.

To recklessly disregard the truth, an affiant "must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information." *United States v. Reed*, 921 F.3d 751, 756 (8th Cir. 2019) (quoting *United States v. Conant*, 799 F.3d 1195, 1200 (8th Cir. 2015)) (internal quotations omitted). Further, an omission is made with reckless

7

disregard for the truth "when the material omitted would have been clearly critical to the finding of probable cause." *Id.* (quoting *Conant*, 799 F.3d at 1200).

Every aspect of the affidavit need not be absolutely truthful. Rather, "it is to be truthful in the sense that the information put forth is believed or appropriately accepted by the affiant as true." *Franks*, 438 U.S. at 165. Affidavits are to be read using commonsense, not in a hyper-technical way. *Illinois v. Gates*, 462 U.S. 213, 236 (1983). Further, mere allegations are insufficient to warrant a *Franks* hearing. *United States v. Kattaria*, 553 F.3d 1171, 1177 (8th Cir. 2009).

Upon review, none of the statements in the affidavit were deliberately or recklessly false, nor was any of the omitted information clearly critical to a finding of probable cause. Further, omitting the alleged false information or including the omitted information would have no material effect on the finding of probable cause.

1. Surveillance of the Silsby address

Defendant disputes Det. Hartman's statement, "Within the past month, I have observed Rodriguez Bradley on several occasions at a residence known to be involved in the distribution of heroin." Defendant alleges this statement is deliberately or recklessly false because Det. Hartman's only reported surveillance occurred three months prior to the affidavit, he observed Defendant at the Silsby address on only one occasion, and there is a difference between being known for drug activity and being known to be involved with the distribution of heroin. Upon review, Det. Hartman's statements regarding his surveillance of Defendant at the Silsby address were not deliberately or recklessly false.

Here, Defendant proffers no evidence that Det. Hartman did not observe him at the Silsby address within the last month nor any evidence that Det. Hartman did not observe him several times. He also cites no requirement, nor is the undersigned aware of any requirement, that an

officer must make an official incident report every time he views a suspect at a residence known to involved in the distribution of drugs over the course of a lengthy investigation. The mere claim that there was only one observance of Defendant at the Silsby address does not prove that Det. Hartman deliberately or recklessly made the statements to mislead. *United States v. McIntyre*, 646 F.3d 1107, 1114 (8th Cir. 2011) (where an officer used the plural "reports" when there was actually only one report does not mean the officer made the incorrect statement deliberately or recklessly).

Given the affidavit is presumed valid and the defense provides no evidence to the contrary, the inclusion of the statement "within the past month" or "several times" does not warrant a *Franks* hearing. In his testimony, Det. Hartman confirmed that he had surveilled the Silsby address several times within the past month, but each instance was not recorded. He explained that each instance of surveillance was not recorded because, at that time, it was a small investigation, not a large-scale federal investigation. Therefore, this statement is not false, let alone deliberately or recklessly false. Removing either statement would have little effect upon the materiality of probable cause given the weight of other facts.

Defendant also analyzes the phrase "known to be involved in the distribution of heroin," as used in the affidavit. He claims that "drug activity," as used in the incident report, is meaningfully different from "involved in the distribution of heroin." However, the Silsby address was known to be involved in the distribution of heroin because Det. Hartman executed a controlled buy where a CI purchased heroin from a resident of the Silsby address. Therefore, the statement that the Silsby address was known to be involved in the distribution was not false.

Accordingly, Det. Hartman's description of the Silsby address was not false, much less deliberately or recklessly so. Further, replacing the phrase "involved in the distribution of heroin" with "involved in drug activity" would have no effect on probable cause.

9

Concluding, Det. Hartman's statements regarding his surveillance of Defendant at the Silsby address were not deliberately or recklessly false and removing the alleged false information would have no material effect on probable cause.

### 2. The October 5, 2016 traffic stop

Defendant also makes several claims regarding the traffic stop on October 5, 2016. He claims: a. Det. Hartman omitted information regarding the police service dog's training; b. Det. Hartman left out information regarding the ashes found in the vehicle; c. Det. Hartman left out Defendant's statement about why he was carrying a large sum of cash; d. Det. Hartman deliberately said the handgun was behind the driver seat rather than under it; and e. Det. Hartman omitted the fact Defendant was on probation for distribution of marijuana, not heroin. After review, none of the above statements were deliberately or recklessly false, nor was the omitted information clearly critical to a finding of probable cause.

### a. Det. Hartman omitted information regarding the police service dog's training

First, Defendant claims the issuing judge should have been told that the police service dog was trained to sniff for five different controlled substances when Det. Hartman simply said the dog alerted to the smell of a controlled substance. In the affidavit, Det. Hartman stated, "[a] police service dog indicated the odor of controlled substance…" He made no other reference to the service dog other than noting that the dog indicated to a controlled substance in other areas. An affidavit is not required to describe the dog's track record or education. *United States v. Jackson*, 811 F.3d 1049, 1052 (8th Cir. 2016) (quoting *United States v. Lakoskey*, 462 F.3d 965, 978 (8th Cir. 2006)).

10

Given that the dog could not indicate which of the five controlled substances it had identified, Det. Hartman's statement that the dog alerted to a controlled substance is factual and not misleading.

Therefore, this omission is not clearly critical to a finding of probable cause, and if the fact that the dog could detect five different controlled substances was to be added, it would no material effect on the probable cause determination

### b. Det. Hartman left out information regarding the ashes found in the vehicle

Defendant next argues that it should be reasonably inferred that the ashes alerted by the service dog produced an odor of marijuana, not heroin. However, Det. Hartman made no reference to the ashes found in the vehicle or that the service dog alerted to the ashes in the affidavit. Det. Hartman also made no reference to the fact that the service dog alerted to the ashes in the part of the incident report that he authored. The only mention that the service dog alerted to the ashes in the vehicle was in the part of the report authored by Officer Miller, the service dog's handler. Miller stated in the report the service dog "indicated the area of the center console near what appeared to be ashes from smoking."

In his testimony, Det. Hartman stated that the ashes and the car did not smell like marijuana, so to include the inference that the car smelled like marijuana in the affidavit would be a false statement. There are no facts in the record and Defendant presents no evidence that the service dog alerted to the ashes because they smelled like marijuana rather than another controlled substance. Det. Hartman testified that several controlled substances could leave ashes after being smoked, not just marijuana.

Accordingly, this omission is not clearly critical to a finding of probable cause and inserting this fact would have no effect on the finding of probable cause.

11

*c. Det. Hartman left out Defendant's statement about why he was carrying a large sum of cash*

Defendant argues that the omission of his statement that the "large sum of cash" was meant for a down payment on a vehicle is a deliberate omission meant to mislead the issuing judge. In the affidavit, Det. Hartman states, "The backpack contained a large sum of cash," and "A police service dog indicated the odor of a controlled substance on the cash..." Defendant argues that there is no evidence to disprove his claim that the money was meant to purchase a vehicle. However, "[a] law enforcement official is not required to include everything he knows about a subject in his affidavit, whether it is material to a finding of probable cause or not." *Technical Ordinance, Inc. v. United States*, 244 F.3d 641, 649 (8th Cir. 2001). Defendant may claim that the cash was for a down payment, but money is viewed as a factor in the totality of circumstances to determine whether there is probable cause regardless. *See Maryland v. Pringle,* 540 U.S. 366, 371-72 n.2 (2003) (the court determined that $763 should be considered a factor contributing to a finding of probable cause). Det. Hartman stated in testimony that he believed the cash might be evidence of drug proceeds. His belief was supported by the service dog's alert to the cash. It should be noted that Det. Hartman did not include his reasonable belief that the cash was involved in the distribution of a controlled substance or Defendant's statement in the affidavit.

Defendant also offers no evidence that the omission was meant to mislead the issuing judge other than a mere claim. Therefore, this omission is not clearly critical to a finding of probable cause and inserting this fact would have no effect on the finding of probable cause in light of the remaining facts.

*d. Det. Hartman deliberately said the handgun was behind the driver seat rather than under it*

Defendant also argues Det. Hartman deliberately misled the issuing judge when he described the gun as being located behind, rather than under the driver's seat. In the affidavit, the gun was described as "behind the driver's seat," and in the incident report following the traffic stop, the gun was described as "protruding from under the driver's seat." Defendant argues that the wording in the affidavit suggests the gun was placed there by Defendant.

Even if Det. Hartman had stated that he believed the gun was placed there by Defendant, such an inference would be reasonable. In the affidavit and at the hearing, Det. Hartman stated the driver of the vehicle stated that Defendant had placed the firearm in that position. And, as described in the affidavit, the owner of the gun stated that Defendant was in possession of the gun. Further, Det. Hartman clarified that the firearm was both under and behind the driver's seat in his testimony. While he could have described the gun as under and behind the seat in the affidavit, this minor discrepancy does not "establish a deliberate falsehood, or a reckless disregard for the truth, nor does it cast doubt on the affidavit's showing of probable cause to search the residence." *United States v. Butler*, 594 F.3d 955, 961-62 (8th Cir. 2010) (the incorrect date of a controlled buy was not enough to warrant a Franks hearing); *see also United States v. Andrews*, 381 F.Supp.3d 1044, 1068 (D. Minn. 2019) (the mistaken reference to Minneapolis rather than St. Paul did not warrant a *Franks* hearing). Also, as the Government points out, it is possible for the gun to be both behind and under the driver's seat.

Here, the statement or alternate phrasing of where the gun was found in the vehicle was not false, so Det. Hartman did not make a knowingly or recklessly false statement. Further, replacing the word "behind" with either "under" or "partly behind, partly under" would have no effect on the finding of probable cause in light of the other facts in the affidavit regarding the gun.

*e. Det. Hartman omitted the fact Defendant was on probation for distribution of marijuana, not heroin*

Lastly, Defendant argues that Det. Hartman omitted the fact that Defendant was on probation in connection to the distribution of marijuana, not heroin. Det. Hartman described Defendant as "on probation for two counts of Distribution of a Controlled Substance" in the affidavit. This is not an incorrect statement since marijuana is a controlled substance. The Government points to the publicly available report on Missouri Casenet showing that Defendant had plead guilty to "Dist/Del/Manif/Produce or Attempt to or Possess W/Intent to Dist/Del/Manif/Produce a Controlled Substance" and not identifying the specific controlled substance.

In his testimony, Det. Hartman testified that he did not know Defendant was on probation for marijuana specifically rather than a controlled substance generally, and Defendant offers no evidence to the contrary.

Accordingly, this statement is not false, and the omission of this detail is not clearly critical to a finding of probable cause. Inserting this fact would have no effect on the finding of probable cause.

Ultimately, Det. Hartman's description of the traffic stop is sufficient. What "a facially valid warrant affidavit *might have contained* is simply irrelevant." *United States v. Smith*, 581 F.3d 692, 695 (8th Cir. 2009) (emphasis in original).

Concluding, the challenged statements regarding the October 5, 2016 traffic stop were not deliberately or recklessly false and the information he omitted was not clearly critical to the finding of probable cause. Further, making the changes to the affidavit as requested by Defendant would have no material effect on probable cause.

### 3. Surveillance of the Thelma address and subsequent drug deal

Finally, Defendant argues that information in the affidavit regarding the surveillance of the Thelma address and the subsequent observation of a drug deal was either false, or relevant information was omitted. Specifically, Defendant argues: a. Det. Hartman only filed one incident report where he observed Defendant at the Thelma address; b. Det. Hartman omitted details to make the identification of the grey Mercedes unreasonable; and c. Det. Hartman omitted information from an incident report during his observation of Defendant dealing heroin. Upon review, this information is neither deliberately or recklessly false nor was anything material omitted.

*a. Det. Hartman only filed one incident report where he observed Defendant at the Thelma address*

Defendant first argues that Det. Hartman reported he observed Defendant on multiple occasions at the Thelma address, but Det. Hartman fails to provide the dates and specific total number of observations. In the affidavit, Det. Hartman stated, "On multiple occasions, I have observed Rodriguez Bradley at 2025 South Thelma Avenue…" Defendant claims there is only one incident report where Det. Hartman describes only one incident of surveillance of the Thelma address.

However, Defendant has provided no evidence to the contrary, nor any support for the premise that an officer is required to create an incident report or make note of every time the officer surveilles a residence. The affidavit is presumed valid unless the defense provides evidence otherwise. Mere allegations of deliberate or reckless false information or omissions are not sufficient to warrant a *Franks* hearing. *See Kattaria*, 553 F.3d at 1177. Det. Hartman stated in his testimony that he had observed Defendant several times within the last month; however, each instance was, again, not recorded.

15

Therefore, Det. Hartman did not make a false statement, let alone a deliberately or recklessly false statement, and the exclusion of the phrase "on multiple occasions" would have little effect on the probable cause determination.

*b. Det. Hartman omitted details to make the identification of the grey Mercedes unreasonable*

Next, Defendant claims the omission of a more detailed description of the Defendant's vehicle misled the issuing judge. Defendant recognizes that no further description is given about the car driven to the drug deal other than it was a "grey in color Mercedez." Defendant claims that it was unreasonable for the issuing judge to make the inference that the grey Mercedes seen at the drug deal was the same grey Mercedes Det. Hartman reported being driven by Defendant previously. The issuing judge may make reasonable inferences when determining probable cause. *United States v. Augard*, 954 F.3d 1090, 1094 (8th Cir. 2020). The inference that the grey Mercedes driven to the drug deal was the same vehicle seen being driven by Defendant is reasonable because the grey Mercedes was driven from the same address as prior observations, and the occupant of the drug-purchasing vehicle, Delaney Murrell, stated that she purchased the heroin from Defendant.

The omission of the identifying information for the grey Mercedes was not meant to mislead the issuing judge since there was sufficient information for the judge to make a reasonable inference that it was the same vehicle as throughout the affidavit. Further, omitting the description of the vehicle from the affidavit would have no effect on probable cause because Ms. Murrell identified the seller of the heroin as Defendant. Thus, the car's make and color are minor, inconsequential details.

Accordingly, the omission of the identifying information was not clearly critical to a finding of probable cause. Further, omitting the description of the vehicle from the affidavit would

16

have no effect on probable cause because the affidavit refers to an eyewitness' identification of Defendant as the seller of the heroin.

      *c. Det. Hartman omitted information from an incident report during his observation of Defendant dealing heroin*

      Next, Defendant argues that because some facts were not in an incident report, the facts are either false or should not be allowed in the affidavit. Defendant notes that in Det. Hartman's incident report he only identifies the driver of the grey Mercedes as a "black male" not as someone he "believed to be Rodriguez Bradley" as stated in the affidavit. Defendant further notes the incident report did not include Ms. Murrell's admission that she bought the heroin from Defendant.

      Here, the undersigned recognizes that whether a fact is included in an incident report or not does not make the fact less true. Again, a minor error does not establish that the fact is false or inaccurate. *See Butler*, 594 F.3d at 961-62.; s*ee also United States v. Robinson*, 744 Fed.Appx. 277, 281 (6th Cir. 2018) ("The potential discrepancy between the warrant affidavit and the police report does not, on its own, demonstrate an overt false statement, let alone a purposeful false statement."). The facts set forth in the affidavit are not precluded by the incident report. These statements are corroborated by numerous other facts in the affidavit. "Because 'there is ... a presumption of validity with respect to the affidavit supporting the search warrant, to mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine.'" *Williams*, 477 F.3d at 558 (quoting *Franks*, 438 U.S. at 171) (internal quotations omitted). In his testimony, Det. Hartman explained that he omitted the identifying information from the report because he wanted to protect Ms. Murrell from retaliation since she was the one who identified Defendant when the report would become accessible to the public.

Defendant offers no evidence that these challenged statements made in the affidavit are false in general, let alone deliberately or recklessly false. His claims are unsupported allegations of falsity. However, assuming arguendo that these statements were false, there would still be probable cause within the four corners of the affidavit. Omitting the information alleged to be false would read something similar to:

> I observed a grey Mercedes being driven by a black male leave the Thelma address. I followed to a business parking lot on Sunshine. I witnessed a third party enter the Mercedes where she remained for around one minute. The Mercedes exited the parking lot and the third party re-entered her own vehicle. I then contacted the occupants of the third party's vehicle. As I approached the vehicle, another third party standing by the vehicle threw a piece of foil on the ground. The foil contained a brown substance consistent with heroin. Heroin was found on the other two occupants of the vehicle as well.

This statement still falls within Det. Hartman's statement earlier in the affidavit that, through his training and experience, he has found "vehicles making frequent stops at business parking lots, meeting with other vehicles and leaving the parking lot in a short time frame without conducting business or entering the structure is indicative of drug distribution." While less condemning, this still supports a finding that there was probable cause to believe there was contraband at the Thelma address. Further, the inclusion of the identifying information would only bolster the finding of probable cause.

Therefore, Det. Hartman did not make this statement falsely, and the exclusion of the challenged phrases would have little effect on the probable cause determination.

Concluding, Det. Hartman's statements regarding his surveillance of the Thelma address and the subsequent drug deal were not false, much less deliberately or recklessly false, and the omitted information was not clearly critical to the finding of probable cause. Further, making the changes to the affidavit as requested by Defendant would have no material effect on probable cause.

4. Conclusion

Because Defendant has failed to make a substantial preliminary showing in accordance with *Franks*, the undersigned recommends Defendant's request for a hearing into the alleged misconduct by law enforcement in procuring the issuance of the search warrant for 2025 South Thelma Avenue be denied.

**B. Probable cause for the warrant**

Defendant argues that the warrant lacked probable cause because the affidavit's support relied partially on stale information, and it failed to create a nexus between the car stop on October 5, 2016 and the probability that there would be heroin in Defendant's residence on Thelma Avenue. The issuing court must have a "substantial basis" to find probable cause. *United States v. Green*, 954 F.3d 1119, 1123 (8th Cir. 2020). A warrant is valid when it "is supported by facts that would 'justify a prudent person in the belief that there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Thurmond*, 782 F.3d 1042, 1044 (8th Cir. 2015) (quoting *United States v. Riedesel*, 987 F.2d 1383, 1390 (8th Cir. 1993)). The decision of whether there is probable cause is determined only by the information contained within the four corners of the affidavit. *United States v. O'Dell*, 766 F.3d 870, 874 (8th Cir. 2014) (quoting *United States v. Solomon*, 432 F.3d 824, 827 (8th Cir. 2005)). To support probable cause, there must be a nexus "between the contraband being sought and the place to be searched." *United States v. Keele*, 589 F.3d 940, 943 (8th Cir. 2009) (internal quotations omitted). Using the totality of the circumstances, the issuing judge is required to consider "all the circumstances set forth in the affidavit before him" to consider whether there "is a fair probability that contraband… will be found in a particular place." *Gates*, 462 U.S. at 238.

The undersigned finds that, upon reviewing the totality of the circumstances provided within the four corners of the affidavit provided to the issuing judge, there was sufficient information to establish probable cause to search the Thelma address.

1. Det. Hartman's experience

As a preliminary matter, the undersigned recognizes the importance of Det. Hartman's experience as described in the affidavit in conjunction with the statements describing his surveillance of Defendant. There is not a per se rule establishing a nexus between a drug trafficker and his home; however, courts "have found probable cause to exist in cases in which officers have stated that in their experience such an inference is appropriate and in which a supporting affidavit also described a defendant's continuous course of drug trafficking activity." *United States v. Ross*, 487 F.3d 1120, 1123 (8th Cir. 2007). Upon review, Det. Hartman's experience and description of his surveillance of Defendant supports the belief that heroin would be found at the Thelma address.

In the affidavit, Det. Hartman begins by giving his experience and training with controlled substances. Det. Hartman makes two relevant statements. He avers that "through training and experience I have found high volumes of vehicle traffic making short, frequent visits to residential locations, is often indicative of drug distribution." He continues, "I have found through experience that vehicles making frequent stops at business parking lots, meeting with other vehicles, and leaving the parking lot in a short time frame without conducting business or entering the structure is indicative of drug distribution."

These two statements are relevant because Det. Hartman later connects these two statements to facts from the investigation into Defendant. First, he states that within the thirty days of filing the affidavit, he "observed multiple different vehicles coming and going from the [Thelma address]." This relates to Det. Hartman's earlier statement about high volumes of vehicles visiting

a residence being indicative of drug distribution. Second, Det. Hartman describes an event within five days prior to filing the affidavit. Here, he followed a grey Mercedes being driven by a male whom he believed to be Defendant park at a business parking lot. A person entered the Mercedes and exited a minute later. The Mercedes then drove away. Even without the subsequent admission by the person that she had just purchased heroin from Defendant, this relates to Det. Hartman's second statement about vehicles making short stops at business parking lots being indicative of drug distribution.

Det. Hartman's statements about the two situations support the reasonable inference that there was drug distribution connected to the Thelma address. Det. Hartman may make reasonable inferences regarding the nexus between suspected contraband and Defendant's address when preparing the affidavit, and the issuing judge may make reasonable inferences about the nexus when deciding if probable cause exists. *Augard*, 954 F.3d at 1094.

These facts, coupled with the fact that Det. Hartman verified that the utilities of the Thelma address were in Defendant's name, provide support for the issuing judge to believe the affidavit established a nexus between the Thelma address and the contraband sought in the warrant.

Accordingly, Det. Hartman's description of his experience and his description of the surveillance of the Thelma address and observation of the drug deal at the business parking lot are relevant to the totality of the circumstances and support a finding of probable cause.

2. The October 5, 2016 traffic stop

Defendant claims there is no nexus between the traffic stop on October 5, 2016 and the Thelma address. "The nexus required by the Fourth Amendment, however, is that between the contraband being sought and the place to be searched." *Keele*, 589 F.3d at 943 (internal quotations

omitted). Upon review, the facts surrounding the October 5, 2016 traffic stop support the belief that heroin would be found at the Thelma address and were not stale.

Here, the inclusion of the facts surrounding the traffic stop provides appropriate circumstances that the issuing judge could consider when evaluating the probability that there would be contraband at the Thelma address under the totality of the circumstances. "[I]nformation about criminal activity at an earlier, unspecified time may combine with factually connected, recent, time-specific information to provide a substantial basis for the conclusion that the criminal activity described in an affidavit is sufficiently close in time to the search warrant application." *United States v. Turner*, 953 F.3d 1017, 1021 (8th Cir. 2020) (quoting *United States v. Maxim*, 55 F.3d 394, 397 (8th Cir. 1995)) (internal quotations omitted).

While the traffic stop three months prior to the issuance of the warrant may not support a nexus between Defendant and the Thelma address, it does give relevant background information connecting Defendant to a known drug house that supports other facts that do provide the nexus to the Thelma address under the totality of the circumstances. Therefore, the facts surrounding the traffic stop are relevant to a finding of probable cause.

Further regarding the traffic stop on October 5, 2016, Defendant also claims the information became stale because it occurred three months prior to the search. "In investigations of ongoing narcotics operations, intervals of weeks or months between the last described act and the application for a warrant does not necessarily make the information stale." *United States v. Carnahan*, 684 F.3d 732, 736 (8th Cir. 2012) (quoting *United States v. Jeanetta*, 533 F.3d 651, 655 (8th Cir. 2008)) (internal quotations omitted). Drug trafficking activity over an extended period does not become stale unless there is an indication that the activity has ceased. *See United States v. Ortiz-Cervantes,* 868 F.3d 695, 700 (8th Cir. 2017) (holding that information was not

22

stale when it was obtained from ten controlled buys conducted at multiple locations during the eight months prior to the warrant).

Here, the information obtained from the traffic stop on October 5, 2016 was not stale. Defendant's illegal possession of a firearm and his possession of a large sum of cash are both relevant to an investigation into drug trafficking. *See Pringle,* 540 U.S. at 371-72 n.2 (money found during a traffic stop is not viewed in isolation, rather it is viewed as a factor in the totality of circumstances); *United States v. Vanover*, 630 F.3d 1108, 1119 (8th Cir. 2011) ("drug dealers…often use firearms for personal protection, intimidation, and to safeguard drugs and cash.").

Further, there is no evidence indicating that the drug activity had ceased. In fact, Det. Hartman has provided information in the affidavit regarding drug distribution related to the Thelma address only five days earlier.

It is reasonable to believe that the investigation into Defendant spanned over three months, as there were facts in the affidavit showing that the distribution of drugs was ongoing throughout this time period. Accordingly, the information was not stale.

Concluding, the facts regarding the October 5, 2016 traffic stop were both relevant to the totality of the circumstances test for probable cause and were not stale.

3.  Confidential informants

Defendant also argues that the CIs were not reliable, and Det. Hartman did not give enough information about the CIs to find them persuasive. In the affidavit, Det. Hartman describes the tip: "[w]ithin the past two months, Officers with the Springfield Police Department Special Investigations Unit have received information from multiple reliable confidential sources regarding Rodriguez Bradley being involved in the distribution of heroin." Defendant cites to

23

*Walden v. Carmack*, 156 F.3d 861, 870 (8th Cir. 1998), and states the information supplied by the informant may be sufficient in a finding of probable cause if it is "corroborated by independent evidence." Defendant claims the reliability of the confidential sources is not established and thus does not support a finding of probable cause. Upon review, the statements made by the CIs were reliable and support a finding of probable cause.

"An informant may also be considered reliable if the information he or she supplies is at least partially corroborated by other sources." *United States v. Buchanan*, 574 F.3d 554, 562 (8th Cir. 2009) (internal quotations omitted). Here, the CIs' tips were "partially corroborated" by the following facts: 1. Defendant was involved in a traffic stop where he was found to be in possession of a large sum of money and was arrested for being in possession of a firearm; 2. Defendant's residence at the Thelma address was frequently visited by a high volume of vehicles; 3. Defendant was alleged to be involved in a drug deal and was specifically named as the seller of the heroin; and 4. Defendant has a criminal history including possession of 15 or more grams of heroin and manufacturing or delivering 15 or more grams of heroin.

Accordingly, the CIs were reliable, and the statements they made were corroborated by several facts.

### 4. Statement that Defendant sold heroin

Finally, Defendant argues that Delaney Murrell's statement that she purchased heroin from Defendant was uncorroborated and should not be considered. As stated earlier, Det. Hartman was conducting surveillance of the Thelma address, and he observed Defendant driving a grey Mercedes several times in the past. On that day, Det. Hartman saw the grey Mercedes leave the Thelma address being driven by an individual resembling Defendant. He followed the Mercedes to a business parking lot where he saw Delaney Murrell exit her own vehicle and enter the

24

Mercedes. A minute later Ms. Murrell exited the Mercedes, which then left. Ms. Murrell got back into her own car, and Det. Hartman contacted the occupants of her vehicle. After review, Ms. Murrell's statement was reliable and supports a finding of probable cause.

Per the affidavit, "It was confirmed by one of the occupants of the vehicle who was also in possession of heroin that he/she had purchased the heroin from Rodriguez Bradley." This statement is corroborated by four facts: 1. Det. Hartman had followed the grey Mercedes from a residence that had its utilities registered in Defendant's name; 2. Det. Hartman had seen Defendant driving the grey Mercedes previously; and 3. Defendant had prior convictions for the possession and manufacture or delivery of 15 or more grams of heroin; and 4. Ms. Murrell was in possession of heroin after exiting the grey Mercedes. *Buchanan*, 574 F.3d at 561-62 (quoting *United States v. Tyler*, 238 F.3d 1036, 1039 (8th Cir. 2001)) ("We have also recognized that '[s]tatements against the penal interest of an informant typically carry considerable weight' in establishing reliability.").

Accordingly, Ms. Murrell's statement that she purchased heroin from Defendant was reliable and supported a finding of probable cause.

5. Conclusion

Based on the aforementioned arguments, the undersigned finds Defendants arguments unpersuasive, and the issuing judge was correct in finding the totality of the circumstances described in the affidavit established probable cause.

**C. Good faith exception to probable cause**

Defendant does not argue Det. Hartman acted in bad faith. However, even if probable cause was not established by the affidavit, Det. Hartman acted in good faith under the *Leon*[2] exception. Under the *Leon* exception, the Fourth Amendment's exclusionary rule does not bar the admission

---

[2] *United States v. Leon*, 468 U.S. 897, 921 (1984).

of evidence if the "officers executing an invalid search warrant did so in good faith*." Ortiz-Cervantes*, 868 F.3d at 702. "The 'good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the [issuing judge's] authorization.'" *United States v. Proell*, 485 F.3d 427, 430 (8th Cir. 2007) (quoting *United States v. Puckett*, 466 F.3d 626, 630 (8th Cir. 2006)). There are four elements to identify when an officer was not acting in good faith:

> (1) the affidavit or testimony supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge; (2) the issuing judge wholly abandoned his judicial role in issuing the warrant; (3) the affidavit supporting the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) the warrant is so facially deficient that no police officer could reasonably presume the warrant to be valid.

*United States v. Dickerman*, 954 F.3d 1060, 1065 (8th Cir. 2020) (emphasis removed). Further, "When assessing the objective [reasonableness] of police officers executing a warrant, we must look to the totality of the circumstances, including any information known to the officers but not presented to the issuing judge." *Proell*, 485 F.3d at 431 (quoting *United States v. Marion*, 238 F.3d 965, 969 (8th Cir. 2001)) (internal quotations omitted).

The undersigned finds that the exceptions are not applicable here, and Det. Hartman acted in good faith. Thus, even if the affidavit did not establish probable cause, the evidence obtained from the search of the Thelma address should not be suppressed.

1. <u>False statements</u>

The first element identified by the *Leon* Court is the subject of the *Franks* hearing. An officer's reliance on a warrant is unreasonable if the affidavit "contained a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge." *Dickerman*, 954 F.3d at 1065. As discussed in the *Franks* section of this report, the

affidavit did not contain any false statements or omissions made deliberately or with reckless disregard for the truth.

Despite minor inconsistencies between the affidavit and the incident report and the affidavit's inclusion of facts not found in any incident report, the affidavit was an accurate retelling of the investigation into Defendant. Therefore, the warrant does not meet the *Franks* exception.

### 2. Abandonment of judicial role

The second element identified is whether the issuing judge abandoned his or her role as a neutral party. An officer's reliance on a warrant is unreasonable if the issuing judge "wholly abandoned his judicial role in issuing the warrant." *Id*. "A judge abandons his or her judicial role when he or she 'does not serve as a neutral and detached actor, but rather as a rubber stamp for the police and an adjunct law enforcement officer.'" *Ortiz-Cervantes*, 868 F.3d at 703 (quoting *United States v. Long*, 797 F.3d 558, 567 (8th Cir. 2015)). A judge abandons her judicial role by not reading the warrant or failing to recognize the warrant was unsigned or failed to identify the property to be searched. *Dickerman*, 954 F.3d at 1067; *Ortiz-Cervantes*, 868 F.3d at 703. Further, a judge violates her obligation to be neutral if she has a "pecuniary interest in issuing the warrant" or she has "actively participated in the police investigation." *Dickerman*, 954 F.3d at 1067-68.

Here, there is no evidence the issuing judge abandoned her judicial role as a neutral and detached actor. The warrant identifies the address to be searched and what contraband was to be searched for. Both the affidavit and the warrant were signed. There is also no evidence that the issuing judge had any conflict of interests to inhibit her neutrality when issuing the warrant or that she actively participated in the investigation. In his testimony, Det. Hartman stated that he personally saw the issuing judge review the affidavit, supporting that she was not acting as a rubber stamp.

Accordingly, the warrant did not rely on the issuing judge acting as a judicial rubber stamp.

3. Indicia to support probable cause

The third element identified is whether the affidavit was so lacking in information that the executing officer's belief that the warrant established probable cause would be completely unfounded. Reliance on the warrant would not be in good faith if the affidavit supporting the warrant is "so lacking in indicia of probable cause as to render official belief in its existence *entirely unreasonable." Id.* at 1065 (emphasis in original). "In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient." *Puckett*, 466 F.3d at 630 (quoting *United States v. Leon*, 468 U.S. 897, 921 (1984)). Further, a "consistent finding of probable cause by every judge who independently reviewed the affidavit, satisfies us that the affidavit bore sufficient indicia of probable cause to render the investigating officers' reliance on it objectively reasonable." *United States v. Ross*, 487 F.3d 1120, 1124 (8th Cir. 2007).

Here, the affidavit provided sufficient indicia to make the belief probable cause was established reasonable. The affidavit was reviewed and approved by an assistant prosecuting attorney then reviewed and approved by the issuing judge. Det. Hartman is not educated in the law, so it is reasonable for him to rely on the determinations made by the assistant prosecuting attorney and the issuing judge that the affidavit established probable cause. Additionally, as discussed in the probable cause section of this report, the undersigned agrees that the affidavit established probable cause. Det. Hartman's training and experience, the CIs' statements, the facts from the October 5, 2016 traffic stop, the general surveillance of Defendant at the Silsby address, the investigation of Defendant's connection to the Thelma address, and the witnessing of the

December 29, 2016 drug deal along with the witness's statement that Defendant sold heroin to her is definitive indicia supporting a reasonable belief that probable cause was established.

Further, even though Det. Hartman did not include certain information from his investigation in the affidavit, his knowledge of these excluded facts affects his belief of whether there were sufficient indicia. Per his testimony, Det. Hartman knew that Defendant's grey Mercedes had a license plate frame and decal with the phrase "The Auto Shop." During the events on December 29, 2016, Det. Hartman observed a drug deal occur inside a grey Mercedes with the same license plate frame and decal. Det. Hartman did not include the information about the license plate frame or decal in the affidavit, but his knowledge of these facts supports Det. Hartman's belief there was sufficient indicia.

Det. Hartman also excluded information from the October 5, 2016 traffic stop. After Defendant was arrested, he was booked at Greene County Jail where two cell phones were found on his person. Det. Hartman found text messages from multiple people asking for heroin. One of the individuals asking for heroin was Delaney Murrell, the witness who met with Defendant in the business parking lot to purchase heroin from him on December 29, 2016. She also identified the individual who sold her heroin as Rodriguez Bradley. Det. Hartman's knowledge of these facts could further support his belief there was sufficient indicia to support probable cause.

Also not included in the affidavit was information regarding a controlled buy from the Silsby address on November 18, 2016. Even though Defendant was not present at the Silsby address at the time of the controlled buy, this fact does support Det. Hartman's belief there was an ongoing distribution of controlled substances from an address in which Defendant was known to be involved.

Based on these facts, the affidavit provided sufficient indicia to make the belief probable cause was established reasonable.

4. <u>Facially deficient warrant</u>

The final element to the good faith exception to the Fourth Amendment's exclusionary rule is whether the warrant was so bare that it could not be believed the warrant was valid. Reliance on a warrant is unreasonable if "the warrant is so facially deficient that no police officer could reasonably presume the warrant to be valid." *Dickerman*, 954 F.3d at 1065. A warrant is facially deficient when it "fail[s] to particularize the place to be searched or the things to be seized..." *United States v. Carpenter*, 341 F.3d 666, 673 (8th Cir. 2003) (quoting *Leon*, 468 U.S. at 923) (internal quotations omitted). Further, the warrant's level of ambiguity is indicative of whether it is facially deficient. *Id*.

Here, the warrant was not so facially deficient that Det. Hartman could not presume it to be valid. The warrant identifies the place to be searched as the Thelma address and the property to be searched for as heroin and other paraphernalia. It unambiguously identifies the address as "2025 South Thelma Avenue Springfield, Greene County, Missouri, is the fourth structure south of Cherokee Street on the west side of Thelma." Det. Hartman then describes the physical attributes of the residence. When describing the contraband sought, Det. Hartman describes "heroin, a brown or gray powder or chalk like substance…" Further, as discussed in the probable cause section of this report, Det. Hartman sufficiently described the facts and circumstances of the investigation to establish probable cause. He was slightly ambiguous in certain parts of the affidavit, but he remained truthful and allowed the issuing judge to make reasonable inferences based on the facts. Therefore, the warrant was not facially deficient.

5.  Conclusion

Based on the foregoing, even if the warrant lacked probable cause, Det. Hartman, acting as executing officer, acted in good faith. Accordingly, the evidence obtained from the search warrant should not be suppressed.

**III.    Recommendation**

For the above reasons, it is hereby **RECOMMENDED** that Defendant's Motion to Suppress Evidence and Request for a *Franks v. Delaware* Hearing be **DENIED**.

/s/ David P. Rush
DAVID P. RUSH
UNITED STATES MAGISTRATE JUDGE

DATE: July 24, 2020