IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 18-03073-03-CR-S-BP |
| ) | |
| RODRIGUEZ R. BRADLEY, ) | |
| ) | |
| Defendant. ) | |

### REPORT AND RECOMMENDATION

Before the Court is Defendant's *Second* Motion to Suppress Evidence. (Doc. 310.) This action has been referred to the undersigned for the purpose of submitting a report on any pretrial motions for suppression of evidence. As follows, it is **RECOMMENDED** that the *Second* Motion to Suppress Evidence be **DENIED**.

**I.  Background**

On August 14, 2018, the Government filed a 22-count Superseding Indictment charging nine individuals, including Defendant. (Doc. 34.) Defendant is personally charged with one count of conspiracy to distribute 100 grams or more of a mixture or substance containing heroin and one count of possession with intent to distribute a mixture or substance containing heroin. (Doc. 184.) He moves for suppression of "all information obtained from two cellular telephones seized from Defendant on October 5, 2016." (Doc. 310 at 1.) In support, Defendant argues that "[f]rom his release on October 6, 2016 to the issuance of the search warrant [] on October 18, 2016[,] the retention of the two cellular telephones [] was without legal cause or basis and constituted an illegal seizure of those two phones." *Id* at 3. The Government has filed Suggestions in Opposition and the matter is fully briefed. (Doc. 328.)

An evidentiary hearing was conducted on February 9, 2021. (Doc. 334.) The Government was represented by Assistant United States Attorney Randy Eggert. Defendant appeared in person with his attorney, Shane Cantin. Steve Hartman appeared and testified on behalf of the Government. At the hearing, the parties stipulated to the admission of the transcript (doc. 244) of the June 3, 2020 evidentiary hearing regarding Defendant's (First) Motion to Suppress Evidence. (Doc. 336 at 2-3.)

## II. Findings of Fact

Steve Hartman is an officer in the Special Investigations Unit of the Springfield, Missouri Police Department ("SPD"). (Doc. 336 at 4, 20.) In September of 2016, Officer Hartman received information from a reliable confidential source that Defendant was involved in heroin distribution and that heroin was being distributed at 424 West Silsby Street in Springfield, Missouri (the "Silsby address"). *Id*. at 5. Officer Hartman began investigating, and on October 5, 2016, while conducting surveillance, he observed a red Chevrolet Impala (the "vehicle") arrive at the Silsby address then leave five minutes later. *Id*. at 6, 21-22. Officer Hartman followed the vehicle, witnessed a traffic violation, and initiated a traffic stop. *Id*. at 7, 23-24.

Officer Hartman approached and saw Jasmine Lynn, the owner of the vehicle, in the driver seat and Defendant in the front passenger seat. *Id.* at 7, 24. At the time of the stop, Officer Hartman was aware that Defendant was a convicted felon on probation for distribution of a controlled substance. *Id*. Upon request, Ms. Lynn gave consent to search the vehicle, and Defendant also gave consent to search his person and his backpack. *Id*. at 8. Officer Hartman found $9,190 bound in rubber bands in Defendant's backpack. *Id*. at 8, 24-25. Officer Hartman called a K-9 officer for assistance and continued to search the vehicle. *Id*. at 9. He found a firearm "partially underneath, partially behind the front driver's seat." *Id*. The K-9 officer then arrived and deployed

2

Case 6:18-cr-03073-BP   Document 351   Filed 06/02/21   Page 2 of 7

a service dog, which indicated the odor of a controlled substance on the money, the firearm, and ashes in the center console of the vehicle. *Id*. at 9-10.

Ms. Lynn stated that Defendant had placed the firearm behind the driver seat. *Id*. at 10. Myesha Dean then arrived at the scene and said she was the owner of the firearm, but that she believed Defendant had taken the firearm from her vehicle, which she had lent to him. *Id*. Defendant was then placed under arrest and taken to the Greene County Jail. *Id.* at 10, 25. During booking, Officer Hartman found two cell phones on Defendant, seized them as evidence, and logged them into the SPD property room. *Id*. at 10-11, 27-28. The next day, October 6, 2016, Defendant was released from custody. *Id*. at 11. The two cell phones were not returned to Defendant. *Id*.

After Defendant was released, during the 12-day period from October 6, 2016 to October 18, 2016, Officer Hartman continued the investigation of Defendant and the Silsby address. *Id*. at 13. Although Officer Hartman believed there was already sufficient probable cause to seize the two cell phones, he sought additional facts to bolster a search warrant affidavit. *Id*. Also during the 12-day period, in addition to the ongoing investigation, Officer Hartman was assigned to a proactive street enforcement unit, working shifts primarily from 5:00 p.m. to 3:00 a.m. with no overtime authorized. *Id*. at 13-14, 36-37. During the 12-day period, Defendant never asked Officer Hartman to return his two cell phones. *Id*. at 16. Shortly before the hearing, Officer Hartman reviewed the SPD property room log and saw no request therein by any person for the return of the two cell phones. *Id*. at 17.

On October 18, 2016, Officer Hartman applied for and was granted a warrant to search the two cell phones. *Id*. at 12-13, Government's Ex. 2. The warrant application and affidavit were three-pages long and took approximately two hours to prepare and another 2-4 hours for the judge

3

to approve. *Id*. at 19.  The warrant affidavit contained no additional information that was learned by Officer Hartman following Defendant's release on October 6, 2016.  *Id*. at 30.  Upon searching the two cell phones, Officer Hartman was able to view several text messages from people requesting heroin.

### III. Conclusions of Law

Defendant asserts that "[f]]rom his release on October 6, 2016 to the issuance of the search warrant [] on October 18, 2016[,] the retention of the two cellular telephones [] was without legal cause or basis and constituted an illegal seizure of those two phones."  (Doc. 310 at 3.)  Also, according to Defendant, "all information contained within [Officer] Hartman's affidavit for the search warrant [] was information known by [him] on October 5, 2016, at the time of [Defendant's] arrest" and "[n]othing would have prevented [Officer] Hartman from applying for a warrant for these two cellular phones prior to [Defendant's] release from custody on October 6, 2016 but for reasons unknown [he] failed to do so."  *Id*. at 3-4.  Mr. Cantin further clarified Defendant's position during the hearing, stating that Defendant's "argument is to the duration of the seizure before they got a warrant," and "not that the warrant itself lacked probable cause."  (Doc. 336 at 47.)

The Fourth Amendment prohibits "unreasonable seizures."  *United States v. Mays*, 993 F.3d 607, 614 (8th Cir. 2021) (citation omitted).  Here, Defendant does not contest that there was probable cause to believe the two cellular phones contained evidence of a crime, as set forth in the warrant affidavit.  Therefore, at the time of Defendant's release on October 6, 2016, the initial seizure of the two cellular phones was reasonable and did not violate Defendant's Fourth Amendment rights.

Following his release, however, Defendant claims that the retention of the two cellular phones for 12 days before seeking a warrant to search them was unreasonable.

4

> A seizure reasonable at its inception because it is based on probable cause may become unreasonable as a result of its duration. The duration of the seizure pending the issuance of a search warrant must still be reasonable, and reasonableness is measured in objective terms by examining the totality of the circumstances. There is unfortunately no bright line past which a delay becomes unreasonable. Thus, in some contexts, a delay as short as 90 minutes may be unreasonable, while in other contexts, a delay of over three months may be reasonable.
>
> To determine the reasonableness of the delay, [the court] must balance the privacy-related and law enforcement-related concerns implicated. On the private-interests side, relevant considerations include the significance of the interference with the person's possessory interest, the duration of the delay, whether the person consented to the seizure, and the nature of the seized property. On the government-interests side, relevant considerations include the government's interest in holding the property as evidence, the nature and complexity of the investigation, the quality of the warrant application and the amount of time [the court] would expect the application would take to prepare, and any other evidence proving or disproving law enforcement's diligence in obtaining the warrant. These factors are by no means exhaustive, but they are the most relevant when [the court] seeks to balance the privacy-related and law enforcement-related concerns.

*Id*. at 616-617 (cleaned up).

Regarding Defendant's privacy-related concerns, the length of the delay, 12 days, is significant. *Id*. at 617 ("fifteen days is a considerable period, which weighs in defendant's favor"); *but see United States v. Gholston*, 993 F.Supp.2d 704, 716-717 (E.D. Mich. 2014) (holding that a seven-day delay in applying for a warrant to search a phone that was seized from a defendant upon release from custody was not unreasonable). The nature of the seized property also weighs in Defendant's favor, albeit generally, as modern cell phones are microcomputers that hold "the privacies of life." *Riley v. California*, 573 U.S. 373, 403 (2014).

However, Defendant never objected to the seizure of the two cellular telephones, nor did he seek their return at any time. Thus, there was no meaningful interference with Defendant's possessory interests, as "an individual who did not even allege, much less prove, that the delay in the search of [the property] adversely affected legitimate interests protected by the Fourth Amendment and never sought return of the property has not made a sufficient showing that the

5

delay was unreasonable." *United States v. Sullivan*, 797 F.3d 623, 633-34 (9th Cir. 2015) (quoting *United States v. Johns,* 469 U.S. 478, 487 (1985)) (cleaned up).

As for relevant law enforcement-related concerns, the Government's legitimate interest in holding the property as evidence weighs heavily in its favor. As previously discussed, Defendant concedes that the warrant to search the two cellular phones was supported by probable cause, and all of the information contained in the warrant application was known to Officer Hartman at the time the phones were seized. *Mays*, 993 F.3d at 618 (citing *United States v. Burgard*, 675 F.3d 1029, 1033 (7th Cir. 2012) ("The state has a stronger interest in seizures made on the basis of probable cause than in those resting only on reasonable suspicion.") The nature and complexity of the investigation also weighs in the Government's favor, as evidenced by the 22-count indictment charging nine individuals with a conspiracy to distribute heroin. (Doc. 34.)

On the other hand, the warrant application at issue was only three-pages long and required only two hours to prepare and another four hours for approval, which does not provide justification for the 12-day delay. But, as explained by Officer Hartman, during the 12-day period, he had other unrelated work assignments, including proactive street enforcement, and was not authorized to work overtime. *See United States v. Hernandez*, 313 F.3d 1206, 1214 (9th Cir. 2002) (holding that competing demands from unrelated cases may be a reasonable cause for the prolonged retention of seized property). Furthermore, Officer Hartman's shifts during the 12 days were primarily from 5:00 p.m. to 3:00 a.m., a time frame during which it would be difficult to obtain approval from a judge.

Considering all of these factors, the undersigned finds the 12-day delay was not constitutionally unreasonable. This conclusion is based largely on the undisputed fact that Officer Hartman had probable cause to seize the two cellular phones, but limited availability to apply for

6

the warrant due to competing demands from other police work. Furthermore, Defendant never sought return of the two cellular phones, rendering any interference with his possessory interest insignificant. As a result, there is no Fourth Amendment violation in this matter.

## IV. Recommendation

Based on the foregoing, it is recommended that the *Second* Motion to Suppress Evidence be **DENIED**.

**IT IS SO ORDERED.**

/s/ *David P. Rush*
DAVID P. RUSH
UNITED STATES MAGISTRATE JUDGE

DATE: June 2, 2021